(No. 4081

HENRY D. HINKLE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 23, 1949.*

*Supplemental Opinion filed November 9, 1949.*

STONE AND FOWLER, Attorneys for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

DELANEY, J.

On January 7, 1947, the claimant, Henry D. Hinkle, an employee of the respondent in the Department of Public Works and Buildings, Division of Highways, was assigned to scatter cinders on icy hills and curves on State Aid Route No. 2. The work was done manually from a truck loaded with cinders. The truck was driven by Earl S. Fowler, a highway sectionman's helper, and claimant shoveled cinders from the rear of the truck. While working two miles south of Alto Pass, in Union County, the truck skidded and claimant lost his balance, fell backward, and his lower back struck the top of the cab and signal lamp. He lay for several minutes because of pain, and then resumed his work. He worked until January 10, 1947, when his discomfort became so great that he was unable to continue.

On the day he was injured, claimant consulted his family physician, Dr. Ernest Radcliff, at Jonesboro, who prescribed rest, analgesics, anti-spasmodics, and heat. A week later, being dissatisfied with his progress, claimant consulted James C. Kincaid, a chiropractor at Anna, Illinois, who gave him thirty adjustments between January 15, 1947, and April 18, 1947.

On February 4, 1947, Dr. Radcliff reported to the respondent that the claimant's injury consisted of a small bruise at the level of the fifth lumbar spine and down and outward toward the left iliac-sacral joint. The doctor considered the bruise inconsequential, and stated that the major injury consisted of a bad sprain of all

the muscles attached to the area; he expected no permanent disability.

On March 8, 1948, Dr. Radcliff again reported to the respondent, stating that claimant could do light work, but that he was fearful claimant might have a lame back for many years. Thereupon respondent arranged for claimant's examination and treatment by Dr. J. Albert Key and Dr. Fred Reynolds, orthopedic specialists, in St. Louis, Missouri. The first examination was made on March 25, 1947, and Dr. Reynolds reported to the respondent as follows: .

"Examination shows the patient to stand with a moderate stoopshoulder. There is a good range of motion of the back but the patient complains of pain in the low back on all motions. There is a mild discomfort in the back on straight leg raising. There is tenderness over the spinous processes of the lumbar vertebrae, most marked over the sacrum. There is also some tenderness over the left gluteal region.

"X-rays showed moderate arthritis with spur formation on the three lumbar vertebrae.

"It is our feeling that this patient was suffering from a mild disc and from aggravation of his arthritis. We recommended that he have a belt and hard bed and take Vitamin B and requested that he return in three weeks so that we might again examine him."

On May 9, 1947, Dr. Reynolds again reported to the respondent as follows:

"We wish to advise that Henry Hinkle was seen again on the 5th day of May, at which time he had been unrelieved by his brace. However, on inspection of the brace it was noted that it did not fit. He was therefore instructed to return to Lehde and Brown so that he might be given a proper fitting brace. Furthermore, examination at this time revealed that the patient's physical signs had become much more definite and that at this time he had very suggestive findings of a ruptured intervertebral disc at the lumbo-sacral junction.

"Should he fail to obtain relief with a satisfactory fitting belt, it may be necessary to consider removal of this disc."

Again on July 2, 1947, Dr. Reynolds sent the following report to the respondent:

"Mr. Henry D. Hinkle was examined again on the 23rd of June, 1947, at which time he stated that his back was causing him more pain

than at the time of his last visit. The pain seems to run up his back and causes headaches. He is also complaining of pain which goes into the left leg to the ankle. These pains are such that he is unable to do any type of work.

"Examination at this time, although it varies somewhat from his previous examination, confirms in our opinion that this man probably has a rupture of an intervertebral disc.

"We recommend that he be admitted to the Barnes Hospital for study at which time a myelogram would be made of the spine and should this reveal that he does have a disc, it should then be removed. These procedures would require the patient to be in the hospital from 10-14 days and should surgery be necessary, the cost of the operation would be $300.00.

"Will you please review this case at your early convenience and let us know whether or not you wish these recommendations carried out."

Claimant was admitted to Barnes Hospital at St. Louis on December 11, 1947, and an examination there disclosed tenderness at the lumbo-sacral junction with limitation and pain on straight leg raising on the left side but with free motion of the spine without much pain. A myelogram revealed no defect in the spinal canal, and the spinal puncture for doing the myelogram gave the claimant almost immediate relief from pain.

Dr. Reynolds stated:

"This remarkable relief of pain from the spinal puncture together with other negative findings is very suggestive that Mr. Hinkle's trouble is mostly imaginary.

"We are sending him at this time exercises and would suggest that he be put back to some kind of work at the earliest possible date."

Following this report, Mr. Hinkle was offered work as a flagman, but he refused, saying the relief obtained from his hospitalization was of short duration and he was unable to work. Arrangements were then made for another examination by Dr. Reynolds, and on February 19, 1948, Dr. Reynolds sent the following report to the Division of Highways:

"We wish to advise that this patient was again seen on 18th of February, 1948, at which time the patient stated that about two weeks from the time he went home from the hospital his pain returned. Be-

cause of this return of pain he has not been able to go back to work. The pain is now just the same as it was before he went to the hospital, being located in the low back mostly on the left side and running into the left hip. Since he was last seen there has been a new development in that the pain now runs up his back to the head and causes him severe headaches with dizzy spells, and at times he is unable to get up because of these dizzy spells. He further states at this time that when trying to walk he drags his left leg.

"It was difficult to make a complete examination at this time because every time the patient would lie down he would grab his head and complain of severe pain and dizzy spells. I do not see that this could have any connection at all with the injury to his back, and from the examination I was able to make, I was unable to come to any conclusion."

Following this report, the case was discussed by Dr. Reynolds and a representative of the Division of Highways. It was agreed that a psychiatric examination was indicated; accordingly arrangements were made for Dr. C. D. Nobles and Dr. D. T. Cole, superintendent and assistant superintendent respectively, of the Anna State Hospital, to make the examination. The examination was made on March 12, 1948. The doctors reported as follows:

"This is to certify that Dr. D. T. Cole, assistant superintendent of the Anna State Hospital, and Dr. C. D. Nobles, superintendent of the Anna State Hospital, have today examined Henry Hinkle of Union County, Jonesboro, Illinois. He gives his age as 52. He is a native of Union County and has a home south of Jonesboro, Illinois. He had been working with the highway department about six years before January 7, 1947, when he received an injury while working on Route 51, unloading cinders, when he fell back against the cab and light, injuring his back. He states that he has suffered with pain in his back, especially in the lumbar region since that time and since December, 1947, when he had a spinal puncture made in St. Louis, Missouri. This relieved him for a couple of days but since that time he has suffered more or less pain, affecting his neck and having dizzy spells at times. When he has these pains it apparently affects his stomach, having a drawing sensation. He also complains of the lumbar region in the left side, the pains extending down to the anterior surface of the femur. When he carries a bucket of water he has to carry it with his left arm because it hurts him to carry it with his right.

"The petellar reflexes were found to be slightly hyperactive, more on the left than on the right. Tactile sense is normal. There were coarse tremors of the extended fingers, more of the left than the right. Fine

tremor of the extended tongue. Slight Romberg. No other neurological findings found.

"He makes the statement that he has not been able to sleep well since the injury, being restless, suffering with pain. He is unable to walk any distance. When asked about his education, he made the statement he had not finished the eighth grade because he had to work on the farm.

"Mentally, he is well oriented, memory is especially good for a man of his education. He claims he carries a notary public commission and at times has been capable of taking oil leases. From the examination which we have found today, the man is not what we would call mentally ill. There is nothing in his mentality that would keep him from working. The only thing we found was somatic complaints which could be explained on the basis of arthritis following the injury."

Again on February 3, 1949, Dr. Reynolds again reported to the respondent as follows:

"In regard to the above captioned case, we wish to advise that this patient was again examined today, at which time he states that he is steadily getting worse, that he has constant pain in his back and in the left leg; the pain going down the leg into the foot and into the great toe. He also states that the leg is getting dead and because of these complaints, he has been unable to work since the 7th of January, 1947.

"Examination at this time shows the patient to have limitation and pain on extension of the spine, there is limitation and pain on flexion of the spine. Bending to both sides is painful, but more so on the left than on the right. Straight leg raising on the left is limited and painful. There was tenderness, most marked at the fourth lumbar interspace, also some tenderness at the fifth. The left ankle jerk was decreased and there is weakness of extension of the toes.

"On this date, this patient has a perfectly typical picture of a ruptured intervertebral disc. These symptoms were not present at the time he was hospitalized in March of 1948. I feel that I missed the diagnosis at that time as a result of the lack of findings.

"At this time, I recommend that the patient have removal of the disc and a special fusion operation."

At the time of the accident, claimant and respondent were operating under the provisions of the Workmen's Compensation Act of the State, and notice of the accident and claim for compensation were made within the time provided by the Act. The accident arose out of and in the course of the employment.

Claimant testified that he had been taking heat and massage treatments for which he had expended $51.00, and that these treatments gave him temporary relief, and the further sum of $12.00 for medicine, making a total of $63.00 expended.

Claimant's earnings during the year immediately preceding his injury were $1,212.00, making a weekly salary of $23.30. His compensation rate is, therefore, 50% of $23.30, or $11.65. Since the injury occurred subsequent to July 1, 1945, this must be increased 20%, making a compensation rate of $13.98 per week.

The Court finds that claimant is totally and permanently disabled, and that he is entitled to an award of $4,800.00. From this award of $4,800.00 must be deducted the sum of $819.38, payment for non-productive time.

An award is, therefore, entered in favor of claimant, Henry D. Hinkle, in the amount of $3,980.62, payable as follows:

$1,151.80, which has accrued and is payable forthwith.

$2,828.82, payable in weekly installments of $13.98 for 202 weeks, with one final payment of $4.86.

Claimant is also entitled to be reimbursed in the sum of $63.00 expended on account of massage treatments and medicine.

An award is also made in favor of claimant, Henry D. Hinkle, in the amount of $63.00 for massage treatments and medicine, which is payable forthwith.

The testimony taken at the hearings before Commissioner Jenkins was taken and transcribed by Imogene Ward Steph, who made charges therefor in the amount of $74.58. These charges appear reasonable and proper.

An award is, therefore, made to Imogene Ward Steph in the amount of $74.58, payable forthwith.

Future payments being subject to the terms and

conditions .of the Workmen's Compensation Act of Illinois, jurisdiction of this cause is respectfully reserved for the entry of such orders as may from time to time be necessary.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."

---

SUPPLEMENTAL OPINION

DELANEY, J.

At the recent September term of this Court an opinion was rendered in this cause allowing the claimant, Henry D. Hinkle, the sum of Forty-eight Hundred Dollars ($4,800.00). The Court's attention is now directed to a pension award in claimant's behalf.

An award is, therefore, entered in favor of claimant, Henry D. Hinkle, after the completion of his payments for total and permanent disability of a pension for life in the sum of $384.00 annually, payable in monthly installments of $32.00.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."